GEORGE A. PENDERGAST *vs.* BURLEY AND STEVENS,
Incorporated.

Essex.    November 3, 1910. — February 28, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

A workman in a shoe factory, operating a dieing out or " dinking " machine used
for cutting leather into required shapes, which may run as fast as one hundred
and fifteen times up and down in a minute, who, for the purpose of removing a
die four or five inches high, which has stuck in the block, unnecessarily puts his
hand on the top of the die, when he might remove the die perfectly well by
taking hold of it lower down, and loses the end of his finger by the beam un-
expectedly coming down on the die when his hand is on top of it, is not in the
exercise of due care, and cannot recover from his employer for his injuries.

TORT by a workman employed in the defendant's shoe factory
at Newburyport, for personal injuries, consisting of the loss of a
part of one of the plaintiff's fingers, which was caught between
the beam of a dieing out or " dinking " machine and the top
of a metal die used for cutting leather into required shapes.
Writ dated January 5, 1909.

In the Superior Court the case was tried before *Fox,* J., who at
the close of the plaintiff's evidence ordered a verdict for the
defendant.    The plaintiff alleged exceptions.

*D. P. Page & S. W. Emery,* for the plaintiff, submitted a brief.

*R. Spring,* for the defendant.

HAMMOND, J.    While the plaintiff was at work for the de-
fendant on a " dinking " machine, one of his fingers was caught
between the striking beam and the top of the die, and was
injured.    The machine was operated by a treadle.    Every time
the treadle was pressed by the operator's foot the machine started
and the beam came down upon the die, and when the foot was
taken from the treadle the machine instantly stopped.

There was some evidence that the machine was out of repair
and therefore repeated, and that in that way the plaintiff's in-
jury was caused.    We have not found it necessary to consider
the question of the defendant's negligence because we are of
opinion that even if there was negligence of the defendant there
is nevertheless a fatal defect in the plaintiff's case.

At the time the plaintiff received his injury his finger was on top of the die. In direct examination he testified as follows: "The accident happened to me that morning. The die had stuck on the block. In the first place I touched my foot to the treadle and cut the last lift that would fill the die, and I had to remove the die from the block and it was stuck in the block and at the time I was breaking it away or removing it, the machine repeated, jamming my finger. When the die got full I took my foot off the treadle to stop the machine. The machine repeated. When I took my foot off the treadle I expected the machine to stay in place as it always did before that morning. The only occasion I had to put my hand on the top of the die was to remove it from the block if it stuck, and it stuck. At the time the machine repeated my foot was not on the treadle. The die was stuck because when the beam comes down on the top of the die it sinks the edge here into the block. It took quite a little exertion to pull the die out of the block. When the machine repeated I jammed my right forefinger, the beam jammed it against the die. I could not exactly say the position of my hand at the time it happened. I was not able to save myself from being hurt." And on cross-examination: "I haven't an idea how my fingers got caught. I know the beam stops at the top of the die, and the only thing that stuck up was the top of the die, and it is plain that I must have put my hand on the top of the die. I would not swear I put my hand on the top of the die, but that is the only place I could have put it and had it struck. My left hand was like that (indicating). Before the beam came down and struck the top of the die I did not try to loosen it with my left hand. Before I put my right hand on top I made no effort to loosen it with my left hand. At that moment I was thinking about the whole machine. I was not thinking about the pulley a great deal; my attention was directed entirely to one part, and that part was the die and the leather that was on the bed." From all the evidence it is plain that the plaintiff intentionally placed his hand upon the top of the die and that the injury was due in part at least to that position of his hand.

Upon the question whether such a position was necessary, usual or proper, the evidence was substantially as follows:

Leary, called by the plaintiff, testified on cross-examination that "the . . . die is four or five inches high. It is a common form of die. The way it is used is to place it on the leather and hold it with two hands or one hand, and you keep your hand there while the header comes down. The header comes down and strikes on the top of that die and the hand of the operator is on the die between the two [the header and the leather], so that the header does not come in contact with his hands at all. If he holds his hands in that position it would not, unless he puts his hand on top of the die. He does not put his hand under the cutting edge of the die ; there is no occasion to do it." The plaintiff testified that " the only thing that would cause me to put my fingers on top of the die was when it would stick on the block. When it sticks would have to work it back and forth either this way (indicating) or put my finger over it. . . . The dies sometimes stick pretty firmly. . . . Just before this accident happened I was looking at the die. Before I put my right hand in I did not look up to the beam to see if it had stuck. If I had waited about a second I could have seen whether it stopped. If I had put both hands on the die like that, that is, both hands below the top of the die, I could have got a pretty good shove on it, my whole weight, and if I had put my hands in that position, the machine could not have touched me." Miller, called by the plaintiff, testified : " If you take hold of a die and keep your fingers off the top of it, you cannot be injured by the beam coming down. The die can be readily grasped without putting your fingers on top. The ordinary way is to hold the back side to you, and they are ordinarily handled by gripping it a little lower than the middle. There is no occasion to put the fingers under the cutting edge." It is plain upon this evidence that in placing his fingers on top of the die the plaintiff was doing what was neither necessary nor usual, nor called for by any unusual exigency. The machine acted rapidly and easily, one witness testifying that " such a machine may run as fast as one hundred and fifteen times up and down in a minute," and that " if the machine revolves a hundred revolutions a minute, you just tap the treadle; you don't have to keep your foot on long to make it come down twice. . . . To make the machine go up and down twice you would have to keep your foot on the treadle a moment,

a little more than a second, less than two." To place a hand unnecessarily on top of the die while at work upon a machine of this method and rapidity of action was manifestly a careless act.

*Exceptions overruled.*